Good morning everyone. Our case this morning is agenda number 11, case number 104-524, Michelle Williams v. John C. Manchester. Mr. Spina, are you ready to proceed? Good morning, justices. May it please the court, counsel. Francis Spina, representing the appellant, defendant John Manchester. As your honors know, this case comes before you on the appellate court's two-to-one reversal of a summary judgment which was granted to my client by the circuit court with respect to a wrongful death claim brought by a defendant. This was brought against my client with respect to the death of an unborn fetus which was approximately 10 weeks gestation at the time the voluntary abortion was undertaken by the mother of the plaintiff. I would suggest to the court that there are, as our briefs indicate, two primary separate bases along with a public policy basis upon which this court should reinstate the summary judgment as a matter of law in favor of the defendant. The first deals with the scope, and it's a more narrow argument, the scope of the wrongful death act and the scope of recovery under these circumstances. The second is the more broader tort policy issue of proximate cause. And then the third and the last one we really talked about goes to the issue of just the general concept of public policy under Illinois law as to whether Illinois law wants to allow damages to be recovered in circumstances where a pregnancy is voluntarily aborted and the damages are then sought for the death of the fetus. Let me first make it clear, and I probably don't need to do this, but this is not a politically related case. This is not a case about morals. There was some mention about scarlet letter and things like that in my opponent's brief, their respondent's brief. This is a purely legal case. It happens to involve an abortion, but this court is not being called upon to make any judgments here with respect to the propriety or impropriety of this abortion or the concept of abortion in general. This is really a tort case, and it can be decided as a matter of law in tort principles. Let me talk about the wrongful death act question first, because if this court wants to, I believe that summary judgment can be reinstated as a matter of law on those narrow grounds, which is that there could be no cause of action here under the wrongful death act under the circumstances that we have here. We know that the wrongful death act, which has been in existence in Illinois now for approximately 155 years, has certain requirements in order to bring a cause of action. The first, of course, is that the death is caused by the negligence of the defendant. That must be demonstrated. But the second part is that the injured party who became deceased must have had an injury at the time of death upon which a cause of action could have been brought had death not occurred. And I submit to this court that there is no such injury in this case under the record that we have before you, and therefore a wrongful death cause of action could not be brought. Justice Cahill in his dissent in the appellate court decision talked about this, and I submit to the court that the majority really didn't have a good answer to that question, and they glossed over it. And I would urge the court to look very carefully on the statutory issue that we have here with the record in this case as to what evidence there is of a predicate injury to the fetus prior to the abortion upon which a cause of action could have been brought on behalf of the fetus had the abortion not taken place, had the death not occurred. Now, the rules of construction are clear by this court. This court has had numerous cases over the years interpreting the Wrongful Death Act. We know it's in derogation of the common law. We know the legislative language, when clear, has to be applied, and we know that the scope of the remedy has to be strictly construed because it is a statutory remedy in derogation of common law. Cases that we've cited in our briefs have consistently held that a decedent has to have had an injury that occurred to the decedent prior to the death in order for a wrongful death cause of action to occur. Now, if I can turn to the evidence in this case with respect to the injury to the fetus. We know, and it's unrebutted, that Baby Doe was not injured in the vehicular accident between my client and the mother, Michelle Williams. That is undisputed. We also know from the case law, including VIRB v. Motorola, that simple exposure to radiation, such as the x-rays that Michelle Williams underwent during the course of her life, was not an injury. Simple exposure to radiation, in and of itself, is not an injury recognized by law. And that's really not disputed. That brings up a comparison, I think, between the Georgia decision in Chile v. Bacon and the Light v. Procter in Illinois case. Would you just compare those two? Justice Freeman, those cases really go more to the proximate cause issue, but I'll be glad to talk about those now. And I don't want to lose sight of the fact that the statutory issue I'm arguing now is a separate and distinct one than the proximate cause, but I will be more than happy to talk about those two cases. In the Roseberry case, which was the 1995 Georgia appellate court decision, the mother had been diagnosed with liver cancer, and she wanted to undergo treatment, chemotherapy treatment. She was 23 weeks pregnant at the time that the abortion was undertaken, and the cause of action was brought into Georgia court by the mother for wrongful death of the fetus, which was voluntarily aborted. A medical malpractice action. And there was an error in that case alleged against the doctors as to their failure to properly diagnose with a standard of reasonable care the viability of the fetus. But the bottom line in that case was that the court found that when the mother chose to voluntarily undergo an abortion in order for treatment of her own condition, the liver cancer, that she could not charge a wrongful death of the fetus. Now, Shirley v. Bacon, and this is very important, and I'm not sure we made it clear in the briefs, and I wish we had done a better job. Shirley v. Bacon did not, other than in dicta, even address that question. Shirley v. Bacon is the 1980 appellate court decision, and in that case, the real legal issue in the case, apparently under Georgia law, at least at the time, it was required to show what the term they used there as quick and easy, and it was required to show what the term they used there as quick and easy. In order for a cause of action to proceed with respect to the death of a fetus, it was required for the plaintiff to demonstrate quickening. And the court decided in that case that the jury had to decide, based on the evidence that was available, whether the quickening existed or, in other words, whether the fetus was viable. And therefore, the case was remanded to the trial court for trial on that issue. And in dicta, in dicta, the court went on to say that the jury should also decide whether the proximate cause exists here under these circumstances. But it's important to note that the term they used was stirred rather than quickening. I'm sorry, and yeah, I might have mixed it up with another case that I've read so many of these cases from the various courts. But thank you, Justice Freeman, you're right. But that was the gist of that case. It turned on a completely different legal issue, Shirley v. Bacon did, whereas Roseberry turns on similar facts to what we have here, which is the intervening cause on the proximate cause issue. And if your honors want me to stay on the proximate cause issue at this point, I'll be glad to, or I'll, well, let me go back and finish off on the statutory question if I could, if that's all right with the court. Let's go back to the evidence of the injury alleged by the fetus prior to death, okay? It really comes from three alleged sources, at least in the briefs that have been submitted by the plaintiff. One is Ms. Williams' statements as to what the doctors said to her. And we know that's not admissible for consideration. It would never go to the jury, and therefore this court can't consider it because it's hearsay. And we have the Jordan v. Morrissey case that we cited in our reply brief, First District 1970, which says exactly on point, an injured party cannot testify as to what doctors told him or her as to what the injuries were, and thereby create evidence as to those injuries. And if you go back to the majority's decision in the appellate court, there is paragraphs and paragraphs of the court discussing what Ms. Williams recited in her deposition the doctors told her. That evidence is not admissible. And therefore the appellate court should not have considered it, and this court cannot consider it on the issue of injury to the fetus before death. It's hearsay, it's inadmissible. Second, we have Michelle Williams' own views as to the risk or injury to her fetus. That's not admissible. She could not qualify to offer that testimony. That's medical evidence. There's no qualification by her to give such testimony. She's a layperson, no medical background or training. So that evidence is not admissible. What are we left with? We're left with the deposition testimony of Dr. Keller and then the affidavit of Dr. Adelman. And I'm not going to go into great detail about we had our motion as to whether this court should consider that affidavit because it really wasn't submitted to the circuit court as part of summary judgment on count two. It was submitted later on a completely different count, but let's leave it in there. You can read through the entire deposition of Dr. Keller and the two important paragraphs of the deposition of Dr. Adelman, and they don't talk about anything other than risk of future injury. There is not a single word said by Dr. Keller in his extensive deposition about any present injury suffered by the fetus as a result of the radiation exposure which it had prior to death. And in fact, repeatedly, and if I could give the court just the page numbers, I don't have the record site, but I do have the page numbers of the transcript of Dr. Keller which are in his deposition, pages 27, 29, 38, 53, and 62. On all of those five separate occasions, Dr. Keller specifically said, I cannot quantify the risk that this baby might have for future injuries because of the radiation exposure. I note that the majority of your argument has been on radiation, on the radiation aspect of this case, and I know that the appellate court found that the plaintiff could state a wrongful death claim for the abortion based upon plaintiff's injuries. I'm wondering if we are down to primarily the radiation issue because I also note, and this is a question for plaintiffs as well, that the majority of their brief deals with the radiation issue as well. You spent a minute or two talking about how the appellate court analyzed this, and as I said, the bulk of their response to you is basically in the radiation area. Is that where you see this case turning then? On this particular question, Chief Justice Thomas, yes, and here's the reason. Because we do have to focus on the fetus, not on the mother. We can't lose sight of the fact that this is a cause of action for wrongful death of the fetus. Michelle Williams brought her own personal injury claims under counts one and count three. Those cases actually were resolved at the trial court level, dismissed, settled, they're done. And those have nothing to do with the cause of action before you now. I don't want to call it narrow, but it's a specific cause of action here for wrongful death of the fetus. And therefore, the mother's injuries don't matter. The mother's injuries cannot be injuries for which a cause of action could be brought by the estate of the fetus for damages. What if the accident caused the woman to go into premature labor and the baby was delivered and didn't make it? Would that fetus have a cause of action? Would there be a cause of action there? Yeah, we know that, Justice Garmon, that's a different situation, obviously. But I would say that if the accident caused premature labor, and obviously premature labor is something that in the normal course of events shouldn't happen, especially to a 10-week-old fetus, I think you could make a decent argument that the birthing of a fetus at that age is an injury to the fetus. Because normally the fetus is going to develop over the 40-week term and be delivered approximately at a normal time, all things being equal. And by being, I guess in a sense, forcibly taken out of the mother through the course of injury from the accident, yes, the fetus in that situation, I think an argument could be made, itself has suffered an injury. But of course, we don't have that here, and that's why that's an important distinction, Justice Garmon, because we have unequivocal medical testimony by Dr. Keller, who's the only one who talks about it. This fetus was not injured in the accident. He knew of no reason why the fetus could not have been carried to term based upon the information he saw. And so we have a complete lack of any evidentiary information of present injury to the fetus. What you've proposed, Justice Garmon, is a different situation. Probably there is there an injury to the fetus. I don't think this Court needs to go there in making its decision, because that would be a different case for a different day. What about the law that says you take the plaintiff as you find them? You know, she'd been a hemophiliac or she'd been at other, you know, you may be liable for more damages because of the condition of the plaintiff which you didn't cause. Why isn't pregnancy the same kind of thing? Well, I'm not necessarily sure that it's not the same kind of thing, but the difference I want to have you focus on here is, again, that question really goes to the mother. And it doesn't focus on the fetus. Yes, we took Michelle Williams as we found her. Yes, she was injured in the car accident, arguably by our negligence. Yes, she sustained certain injuries which the record showed. And yes, her case is resolved because of that. That's how you found her. The fetus, on the other hand, we found the fetus, Ms. Williams being pregnant, 10 weeks along. She's in an accident. But the fetus really comes out of the accident in a sense no different than it went into it as a fetus, as a viable pregnancy. And Dr. Keller tells us that pregnancy remained viable. Dr. Keller says, I'm unaware of any present injuries suffered by the fetus. And that's why we need to turn to the question of radiation because that really is, Chief Justice, the only real injury that could be argued by the plaintiff that the fetus sustained. There are no other injuries to the fetus anywhere in this record. They seem to rely a lot on Dillon v. Evanston, 2002 case, other than the fact that that was not a wrongful death statute case. But how do you distinguish that? Well, that is a big distinction, Justice Freeman, and here's why. Dillon, as the Court knows, established the principle that where someone has suffered an injury presently, in that case the catheter segment was left behind, lodged in the heart, injured the heart. And there was medical testimony that because of that catheter being in the heart, the following things might occur in the future, and the doctors testified to what those various things were and gave a percentage likelihood. This Court found that in those circumstances, future injury would be compensable. But the very critical point in that case is that there was a present injury and the plaintiff was not deceased. And let me just suggest to you, and we kind of go into this in our reply brief, how can a decedent have any risk of future injuries? By definition, death cuts off the possibility of future injury. And in this case, if you start from the proposition, which I submit you must, that there is no present injury to the fetus, and then the death occurs through the abortion, that completely eliminates the possibility of any future injury to that fetus, and therefore it's completely distinguishable from Dillon. And I would urge this Court not to extend Dillon, as the plaintiff wants you to do, to a wrongful death case where there is no present injury to the injured party, because doing so is sort of allowing recovery of damages which in reality can never occur because the death has eliminated that possibility. And that's why it's a big distinction that this is a wrongful death case and that was not. Mr. Spina, I see your light went on, and I just want to make sure that I understand your argument on radiation, and maybe you'll have a second or two to either add or delete from, because I know we've been asking you questions. I think you said that radiation is not a recognizable injury. That was one of your points. I thought the other was exposure to radiation is not an injury resulting from the defendant's negligence in this case. And then I think you were starting to say that even if we got past all of that, any evidence concerning the effects of radiation were speculative. Now, were they speculative in the sense that some of the testimony, the hearsay testimony, and otherwise should have never come in, or are they also speculative in the sense that the doctors were merely speculating as to what may occur? And let me go through each one of those, Chief Justice. And tell me if I'm wrong on those points or if you have some additions or deletions. Yeah, I think you're generally right. Number one, Virb v. Motorola tells us exposure to radiation in and of itself is not an injury, a present injury. It's Virb v. Motorola, no contrary cases. Number two, was the radiation in this case a cause in fact from this accident? Yes, of course it was. Ms. Williams would not have had the X-rays had she not had this accident. But the more important part to get to the next step of your question, Chief Justice, is the issue of the speculative nature. We only have two sources of testimony on the radiation future risk. And, again, it is a future risk, not a present injury. And that's Dr. Keller and Dr. Adelman. Neither of them quantify that. And under the Foley case, which we cite specifically on point, under Dillon that's not admissible. There has to be evidence that is more, you know, might or could occur. And Dr. Keller expressly says on those five pages, I tell you, I cannot quantify the risk of future injury as to whether it exists, which Foley tells us makes it inadmissible. And Dr. Adelman's affidavit simply talks about there is a risk, and he never quantifies it either. Therefore, it doesn't meet the admissibility test. So at the end of the day, the record here fails to establish a question of fact on the risk of future injury, which would be sufficient under the Wrongful Death Act for the cause of action to occur. Right. And although you acquiesce on the cause and fact, I see your brief does comment on legal cause. Absolutely. And that's a very critical question. When you get to that second issue on proximate cause, the legal cause, it's necessary under the legal test. And we do have an intervening act here. And it's very important for this Court to recognize that distinguishes the Lee case from all of the other decisions by this Court. Young, Gallman, Merlo, Thompson, Briskey, Abrams, all of those had intervening acts, just like we have here, the abortion choice and activity by Ms. Williams. And therefore, we need to turn to the intervening act cases. And we know that the standard established by this Court under legal cause where there's an intervening act is whether that decision was something a reasonable person, objectively, would see as a likely result of the activities which happened to the uninjured person. Critical issue. Your time is up, but Justice Freeman has informed me he has a question. If not under the Wrongful Death Act, what remedy would this mother have left the loss of the unborn child that is a result of the accident? Well, I believe there would be no remedy. And, again, we're distinguishing the remedy that the mother had for her own injuries separate and apart, not relevant here. But, Justice Freeman, I want to make a very important point here, which is your question presumes that there was an injury or damages suffered and that there should be a remedy for that. And I go back to the part that there really, in the record, there is no evidence of injury or damages to the fetus before it was aborted. And therefore, there is no cause of action because there are no damages. And I hope you understand your question assumes that there would be damages and, therefore, there should be a remedy. But in this record, there were not, other than the speculative future risk of injury, which at the end of the day under the case law is not admissible. Is it your position that if there had been such quantifiable risk presented, testimony presented, would it be a different case? I think it probably would. I mean, I'll give an example, Justice Garmon. If somebody had come in and said, consistent with what we saw in Dillon, and, you know, the problem is it's a wrongful death act case. If somebody had come in and said, this fetus suffered the following injuries as a result of the accident or the following present injuries before it was aborted, you would then have the prerequisite element of a wrongful death case, which is there could have been a cause of action brought prior to death, but death interceded. Had there been such evidence, but there is none. And I don't want to lose sight of the fact, which I argued before, that Dillon should not be extended under a wrongful death act case to allow evidence of just future risk of injuries. In other words, if there had been evidence that this fetus had a 40% chance of suffering injuries in the future from the radiation, but, of course, those injuries had not occurred at death and there was no other injury at the time of death, I submit that still is not a cause of action under the wrongful death act, which requires a present injury on which an action could have been brought prior to death. And you can't bring an action for future injuries, even under Dillon, where it's just future injury. Thank you, Mr. Speaker. Thank you. Mr. Wool. May it please the Court, Counsel. This is not a case about a voluntary termination. Mr. Manchester's negligence made Mrs. Williams have to pick between having an abortion or risking severe and significant permanent disabling injuries and giving birth to a baby with serious defects. The severity and significance of the injuries are evident by where the termination was allowed. At a religious hospital that did not allow terminations unless a perinatal committee first determined medically that the risks were significant risks to either the mother, the baby, or both. Mr. Manchester should not be able to insulate himself from liability because Ms. Williams picked one of three horrific, objectionable options that were forced upon her because of his negligence. If you break down this case with counsel appears to be doing is intermingling, commingling the wrongful death act and the proximate cause. I think proximate cause is clearly found here. Is it reasonably foreseeable that a pregnant woman who gets severely injured may have to terminate a pregnancy because of risks to her, significant risks to her, or risks to the baby? From a foreseeable standpoint, is that so far removed, remote? Was Mr. Manchester's negligence a substantial factor in causing the x-rays to be given to Ms. Williams as a result of these severe injuries and as a result of the termination? I believe so. It is our position that any of those options that were objectionable options, no one would want to be in that situation to have to pick among those three. That's not a voluntary choice. Any consequences that would stem from any of those options that were forced upon her as a result of Mr. Manchester's negligence, there should be accountability on Mr. Manchester. But doesn't that go to the mom's injuries? This is a wrongful death for the death of the fetus, which is a statutory cause of action. I mean, you filed it under wrongful death for the fetus, did you not? Yes. Well, there are two issues. There's the foreseeability, proximate cause analysis, and the wrongful death act. And I think for proximate cause analysis, you do look not only to the mother's injuries as well because it establishes the reasonableness, the foreseeability of the act of the termination. So I'm suggesting to you that whether the baby, the fetus, was injured or not in this matter for only proximate cause analysis, it need not matter because it is still reasonably foreseeable that a mother who is pregnant would terminate her pregnancy simply because of significant risk to herself. I'm suggesting to this Court that for proximate cause analysis. Now, in answer to your more specific question with the wrongful death act, yes, I believe we do have to have I think it's unclear whether an injury needs to be occurred, had to have occurred in the wrongful death act. Assuming that this Court determines that there must be an injury to the fetus to pursue a wrongful death act, I believe there is evidence. And, again, I don't You can't separate the two, though, can you, Mr. Wolf? I mean, you talk about for proximate cause analysis. The analysis you gave us is a negligence analysis. And then we have the wrongful death act, which is statutory, and I think doesn't it change everything if there has to be an injury to the fetus? You're trying to have it separate and say, well, it's foreseeable that there could have been that this driver could have known that this could have happened, and that's all foreseeable. But if the starting point is whether or not there is an injury to the fetus, as Justice Garmon is saying, from the statutory framework, doesn't that change everything? Well, I think in the sense of that if this Court determines that under the wrongful death you need an injury before the death, and had the fetus been alive, there would have been a he or she could have maintained a cause of action, then yes. And I believe there is Is that why, and I don't want to put words in your mouth, but I did with Mr. Spina, is that why you're refocused on the alleged injury to the fetus? It seemed like you kind of departed from the analysis by the appellate court, maybe thinking that that was an error, and going to the radiation aspect of the case, which I think is your point, that there was an injury to the fetus through the radiation. We agree with Justice Gordon's decision, and I think in Justice Gordon's decision, implicit in his decision is that there was an injury to the baby. But I believe here, again, with the standard being is there some evidence, as opposed to as if we had a trial, there is evidence that the baby was injured. Counsel, this case is being argued as if it was a given that the abortion itself could not be the injury. Is that accurate? Yes, and that's why I qualified my statement to Madam Justice that if this court determines that a separate independent injury. Let me ask you some follow-up questions, because I need to ask a question that's going to sound silly, I think. If the issue is one of foreseeability, and what was foreseeable was the abortion, the abortion involves a process which first injures and then kills the baby. There's no question about that. Is that correct? Yes. If that was foreseeable as a matter of law, cause and law, if you will, cause and fact has been conceded there was the connection because there was the linkage between the acts, cause and law is whether or not it was foreseeable and thus approximately caused. If the abortion itself was foreseeable, can you tell me why that wasn't the injury? Well, I believe that that could be, if this court determines under the Wrongful Death Act that an injury need precede the death, that that would be sufficient for an injury. Another question. Sure. Does the injury that we've been talking about up to this point have to be linked to the death, or can the injury be totally independent of the death and satisfy the requirement of the act? I think it depends on the circumstances related. I think the injury, if one is required, has to be approximately related to the negligent conduct. My opposing counsel cited the case of Roseberry. There, the termination, whether it be just the termination at the death or the injury preceding the termination in that the baby is first injured during an abortion, in that case the reason for the termination was unrelated to any negligence. Here it is causally related, directly related to Mr. Manchester's negligence. But I want to go back that, if that answers your question. Go ahead. I would like to proceed with where else we may see an injury under the facts. And again, is there sufficient facts? In Dr. Kelleher's deposition, he testified, there is no safe threshold for radiation to a fetus, meaning that once she's radiated, there is an increased risk of problems related to the radiation. Yes, I can't say that the baby, excuse me, C341. Yes, I can't say that the baby certainly would have suffered, but the baby certainly was at increased risk of having problems related to its radiation exposure. Isn't that speculative? I can't say that the baby would have suffered. Can you read that again? Sure. Yes, I can't say that the baby certainly would have suffered, but the baby certainly was at increased risk of having problems relating to its radiation exposure. And in answer to your question, the only lack of certainty is as to whether or not the event, that is, the birth defects, was certain to occur. And under this Court's analysis in Dillon, the mere fact that there is sufficient evidence of an increased risk of harm, as this Court stated, that the increased risk is itself a present injury. You can apply the Dillon case to a wrongful death act. We are using the Dillon case to satisfy the injury element. And if you look at Dr. Kelleher's further testimony in this case, when he was talking about that radiation of C316, that radiation exposure affects cellular development, and he answered, so certain organs that are developing may develop incorrectly, certain organs that have developed may grow and mature incorrectly, and then there is the increased risk with radiation exposure of malignancies, childhood and adulthood malignancies, which means under increased risk of harm, which I submit to you was testified with certainty by Dr. Kelleher as well as Dr. Edelman, that satisfies the injury. And then the testimony that there are childhood and adulthood malignancies satisfies that if this baby did not die and was born, he or she would have been able to maintain a cause of action for increased risk of harm throughout his or her life. We would have to expand Dillon under your analysis. I don't think so. In Dillon, this Court to a wrongful death act. I don't think so. I think what you're doing is simply using your analysis in Dillon to say that an increased risk of harm is an injury. So therefore, under the wrongful death act, we have satisfied that element of injury. Is any increased risk sufficient? I think under the Dillon case, for purposes of the increased risk of harm, as long as you have above zero percent, yes, because you discussed the instructions that would be necessary. And counsel brought out... If the fetus had survived, could the fetus have brought an independent action for that increased risk of harm? Yes, that is my point. Based on the testimony of the increased risk of harm was not just to be born with serious birth defects, but to be born with defects and malignancies that go throughout her life, his or her life, such as childhood maladies and adulthood maladies such as leukemia, as Dr. Keller testified. And I think that is sufficient evidence of an injury, an increased risk of harm. And you are simply using that if this court determines an injury is necessary and if this court determines that the abortion is not a preceding injury, you have the risk of harm. My opposing counsel referred to VIRB versus Motorola. That did not stand for the proposition that there is no action for radiation exposure. In that case, the increase of risk was an increased risk of exposure, not an increased risk of harm as a result of documented exposure. In that case, it was a pleading stage, and they did not even plead that the individuals using phones in a completely different type of radiation, that they were even exposed to it. It was merely an increased risk of exposure. Here, it is undisputed that the baby was bombarded with pelvic x-rays and a cath scan in the emergency room. So there is no question that radiation exposure existed, and the increased risk of harm is from that radiation exposure and is in Dillon. It satisfies the injury. I would also suggest to the court. So if this court found that the wrongful death act required a present actual injury before the abortion, you'd be out of the box then, wouldn't you? You mean a direct injury from a present actual injury? Like a physical injury from the auto accident. Absolutely. Yes. Like that. Yes. But that, I don't believe, is the proximate cause analysis or what an injury is considered under that type of analysis with all respect to this court. Then Dillon would not apply. This court has, in Dillon, recognized that a risk of harm is a present injury. I would also suggest to this court that because of the intimate and special relationship between a mother and a fetus, that an injury to the mother when she is severely injured may be considered an injury to the fetus. And there was a present injury in Dillon. Since we're on Dillon, there was a present injury, right? I believe the injury was the radiation exposure. Well, he left a catheter inside the plant, right? Well, the catheter tip was left by the heart. Here we have the radiation exposure as being the foreign object within the body. I don't see a distinction between the two. There was no testimony that there was actually a physical injury other than a foreign body by her heart. Here we have the foreign body being the radiation exposure through CAT scan and pelvic x-rays. Does that answer your question? Sure. You just said a little bit ago, you said an injury to the mother is an injury to the fetus. Yes. Do you have any case law support for that? I think, no, not on the specific point that I made. But under Renslow, you do discuss, and the case is following it, you do discuss the intimate and special relationship that lives with a mother and a fetus. And I am suggesting to this court that an injury to the mother when, for all practical purposes, she is the shell, the house, the life support system of the fetus, that if she is injured to such severity, as is the case here, that it may medically necessitate a termination, that's going to be detrimental to the fetus. And I believe under that unique situation, you should consider a serious injury that necessitates a foreseeable termination should be considered an injury to a fetus that is, in the first trimester, is not viable outside that protective shell. With regards to public... It would be different if the child, she was six months pregnant? I think it would depend on the circumstances, because the question becomes then, was she able to be delivered at that time without radiation exposure, without... I mean, in this case, if you recall, that the other two options that my opposing counsel wishes that Ms. Manchester chose was to either have immediate surgery with the baby, which would result in significantly more radiation exposure, or wait three months. There is no testimony that, if you read the depositions and read the testimony, she had three options. One of them was not to carry the fetus to term. It was to six months, an additional three months. And Dr. Kelleher testified that, in the record, the surgeon that would have done the operation said, not only will there be additional radiation exposure to the baby during this delayed surgery, but it may even be more substantial additional radiation exposure because it now becomes a more complicated surgery. And that ties in the increased risk of harm to the mother in delaying, because broken bones, the bones may have to be re-broken. And there was a question as to whether she could even carry it for additional three months. Does that answer your question? If I may proceed? You may proceed. You know, Justice Garmon asked an interesting question that I don't know that was totally answered earlier. It seems like the doctors said, you know, to a reasonable degree of certainty, we can't say there's going to be an injury to the fetus upon birth, but there's an increased risk of injury. She asked the question, does any increased risk, and I believe what you said is anything above zero percent, right? Yes. So the Wrongful Death Act itself says if death had not ensued, have entitled the party injured to maintain inaction and recover damages. So we're left with testimony of, well, I don't know exactly what, I mean because he didn't say what percentage, but it could be so de minimis. You're saying any de minimis type of increase in future injury is enough to invoke the Wrongful Death Act in this situation? Well, I think any percentage of risk of harm, as this court in Dillon stated and referred to, that even if it was only one or two percent or five percent or ten percent, yes. Well, let me give you an example. I would assume the same response, I'm not a doctor, but I would assume the same response would be made if she needed an X-ray of her wisdom teeth because we're told all the time that there is an infinitesimal chance of invoking harm when we have X-rays when we go to the dentist. Is that the type of injury that we're talking about, that we should be talking about here in light of the Wrongful Death Act, especially when those same doctors say they can't, to a reasonable degree of medical certainty, say there will be an injury. It's just an increased chance. I think there is a distinction between X-rays when you're having your teeth worked on and a CAT scan, which is a higher form of radiation, and pelvic X-rays to an area where the fetus is. I'm glad you said that because I think that goes to my point. My point is if she is in an accident and her head hits the steering wheel and she has some broken teeth and they say that we have to X-ray those teeth and you ask the same question to those doctors, any X-ray increases harm, increases the chance of cancer to a certain degree. Whether it's a pelvic, I would think. Again, I'm not a doctor, but I'm trying to give you a hypothetical that says, let's use that hypothetical. So the doctor is in that case. She has a couple of broken teeth. First of all, I would point out that at the summary judgment stage, quantification was not even an issue. Quantification was not brought up as something lacking. It seemed, based on the briefs, and I invite this court to review them, is that the opposing counsel and the trial judge, Judge Duncan Bryce, seemed to be solely focused on the Light v. Proctor case and that somehow the termination was the actual cause of the death and nothing else mattered. We argued increased risk of harm at that point. I bring this up, Mr. Wolf, only because if you look at the Dillon case, I mean, we can argue whether or not the catheter situation, migrating to the heart and all that, is the physical injury, and you say that the radiation itself is. But if we look at that, the future harm is an element of damages, I think, in Dillon after there's already been an assessment that there is an actual injury. In this case, we're back to the point that we would have to note radiation is the actual injury, and you even said that. You said that in comparison to Dillon, that radiation is the actual injury. And the actual injury is that, as the testimony of Dr. Keller, and I could read other transcripts where it says where once the baby is irradiated, she or he is at increased risk of all these birth defects. I believe that satisfies an increased risk of harm, which this court in Dillon said satisfies the fact that that is a present injury. Again, we must look at the context of where this termination was occurred. If this was such a de minimis risk to either the mother or to the fetus, this hospital would have never allowed the termination to proceed, and that is the evidence that they only determined a termination was acceptable because they do not allow elective terminations. But I would suggest, first of all, we do have, again, quantification was not an issue. The standard here is should we be allowed to do that? Is there a question of fact? I think the mere testimony of Dr. Keller and Dr. Edelman that there was an increased risk of harm to this fetus as a result of the radiation exposure all put into being as a result of the negligence of Mr. Manchester, satisfies that injury requirement. And if this fetus was born, even if this fetus was born without a serious birth defect at birth, she or he would have a cause of action for the increased risk of harm for the childhood and adulthood maladies and malignancies that were testified by Dr. Keller as being known and related to radiation exposure. Thank you, Mr. Wolf. Rebuttal, Mr. Spina? May I just make one comment regarding public policy? I was not allowed to. Thank you. Sure. Counsel makes an argument that somehow this court, by not ruling against Ms. Williams, will somehow give incentive to create abortions. I think that is absurd. I think it's an affront to women, and they have not provided anybody, this court, with any rules, studies, or statistics. I think we have established either through the injury to the mother or through the injury to the fetus through this increased risk of harm, we meet any injury element of the wrongful death and the element to maintain a cause of action. Thank you, Your Honor. Thank you, Mr. Wolf. Thank you, Justice. Rebuttal, Mr. Spina? Thank you again, Your Honors. We have a very important concession here, and that very important concession, which I'm not surprised at, is that the present injury, which the Wrongful Death Act requires, is nothing other than the risk of future injury. That's very important because we now have the concession, and I think we had it in the record before. There is nothing else other than the risk of future injury. And we know from the Lewis v. Lead Industries case, which is a First District 2003, that cited that a risk of future injuries in and of itself is not a compensable injury without additionally a present existing injury. And that case interpreted and applied Dillon and noted that in Dillon there was a present injury and noted that this Court said essentially in Dillon where there is a present injury and also a risk of future injuries, we're going to allow recovery for that risk of future injuries where it's sufficiently proven up. Now, the plaintiff has basically said I have no present injury. And because of that fact, Lewis tells us and Dillon tells us there is no cause of action here under the Wrongful Death Act. Let's turn to the quantification of the risk of future injuries. Foley v. Fletcher, which we cited to you, a First District case, also applying Dillon, says if there's no quantification of the risk, it's not admissible and it can't prove up the case. And we have here Dr. Edelman's affidavit, two paragraphs only, talk about the risk. He gives absolutely zero information about the quantification. So we must throw out Edelman's affidavit as support for the standard of proof  Then we turn to Dr. Edelman's testimony. And I read to you the five pages where he expressly states I cannot quantify the risk. Five different times at five different points in that deposition, he said I cannot quantify the risk. At one point he expressly said, and I don't remember exactly the percentages, but I'll just use the example that's in the transcript, I can't say whether it's 1 percent, 90 percent, 5 percent, whatever. I cannot quantify the risk. Now those are the only two sources of evidence. Mr. Spina, did the doctor say there was 0 percent? He said I can't quantify it, Justice Kilbride. My question is, did he say 0 percent? He didn't. And he clearly said that there is a risk under medical testimony. But the Foley case tells us that that's not enough. And that was exactly on point. And I know you all look at Foley. Foley specifically says where the doctors say there is a risk but they do not quantify it, that doesn't meet the standard of admissibility as being reasonably certain. So to answer your question, Justice Kilbride, I think the fact that he didn't say 0 doesn't matter because saying risk but not quantifying it doesn't meet the standard of admissibility. What about the question at the summary judgment stage? Was quantification asserted and argued? I would suggest to you that it wasn't argued per se like that, but I suggest it doesn't have to be because we all know that when a summary judgment motion is brought and the defendant who is moving for summary judgment in this case makes a prima facie case that they're entitled to judgment as a matter of law, the burden does shift to the plaintiff to come forward with some evidence that would be admissible to create a question of fact. So it was, you know, the law is the law, and they have to state a cause of action. They are the plaintiff for a wrongful death. The element of the cause of action is a present injury. They're relying upon this risk of future injury with radiation as their present injury. Foley and Dillon tell us it has to be quantified. I think it follows my logic that goes along that the burden was on them to do so to avoid entry of summary judgment, and they didn't, and they didn't, and it's clear that there is no evidence of the quantification there. Let me just turn quickly to the proximate cause analysis. You heard Mr. Wolf talk about a substantial factor. That's the cause and fact part of the component, and we can't lose sight of the fact that the analysis is different, especially when we have an intervening actor, the abortion, the bad driver, the crane operator, et cetera. In the proximate cause analysis on legal cause, the subsequent intervening act, here the abortion, has to a reasonable person, or in other words objectively, be seen as a likely result under the circumstances. That's the test, and the key word there, one of the key phrases is likely result, and I submit to this court that where you have an uninjured fetus who the medical witnesses say could be carried to term, whose mother is injured in an automobile accident, objectively it is not a likely result that that mother is going to elect an abortion to terminate that life from the auto accident. And, you know, we go back to everything we all learned back in law school about proximate cause, and we know the cause and fact is simply but for. But legal cause is, as a very learned professor that I had back in law school said, how far is the rubber band going to stretch before it snaps? And that's a policy decision that this court needs to make. And the policy decision in proximate cause in this case is, do we want to say that a voluntary abortion of an uninjured fetus is a likely result of an automobile accident where the mother is injured? And I submit that as a matter of law it's not. And that's a policy decision. I mean, we can't disregard the fact, as I know this court knows, that proximate cause is really kind of an esoteric analysis. It's not easily quantifiable. It's a judgment call that the court needs to make. When does the rubber band snap? When is legal cause no longer there? And I submit to this court that a voluntary abortion of an uninjured fetus is not a likely result of an automobile accident like this. Therefore, there is not proximate cause. We do have the condition versus cause or the superseding intervening act situation that all of those prior cases that this court has dealt with have talked about. Unless this court has any other questions. Oh, one other thing I want to say, and I apologize. There was something brought up about Mr. Wolf about the mother's injuries equal an injury to the fetus. They're two separate people, and we know, as a matter of statutory law in Illinois, that a fetus is recognized as an independent and separate person, a separate entity. So the injuries to the mothers are irrelevant to the wrongful death cause of action. There must be an injury to the decedent, which in this case is the fetus, which could have been brought had death not ensued. Please don't lose sight of the fact that the focus for the wrongful death argument has got to be on the injury to the fetus and not the mother. Justices, unless you have any other questions, I thank you for your time. Thank you, Mr. Spina, and thank you, Mr. Wolf. Case number 104-524, Michelle Williams v. John C. Manchester, is taken under advisement as agenda number 11.